No. 23-13253

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

ERIC ANDRÉ and CLAYTON ENGLISH,

*Plaintiffs-Appellants*,

v.

CLAYTON COUNTY, GEORGIA; KEVIN ROBERTS, in his official capacity as Chief of the Clayton County Police Department; AIMEE BRANHAM, individually and in her official capacity as a police officer of the Clayton County Police Department; MICHAEL HOOKS, individually and in his official capacity as an investigator of the Clayton County District Attorney; TONY GRIFFIN, individually and in his official capacity as a police officer of the Clayton County Police Department; KAYIN CAMBELL, individually and in his official capacity as a police officer of the Clayton County Police Department; and CAMERON SMITH, individually and in his official capacity as a police sergeant of the Clayton County Police Department,

*Defendants-Appellees*.

On appeal from the United States District Court for the
Northern District of Georgia, Hon. Mark H. Cohen
No. 1:22-cv-04065-MHC

## APPELLEES' BRIEF

Jack Hancock
Jack.hancock@fmglaw.com
Elissa B. Haynes
Elissa.haynes@fmglaw.com
A. Ali Sabzevari
asabzevari@fmglaw.com
FREEMAN MATHIS & GARY, LLP
100 Galleria Parkway, Suite 1600
Atlanta, Georgia 30339
(770) 818-0000
*Counsel for Defendants-Appellees*

*André v. Clayton County, Georgia*, No. 23-13253

**CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT**

Pursuant to Federal Rule of Appellate Procedure 26.1 and Eleventh Circuit Rule 26.1-1, Defendants-Appellees state that the Certificate of Interested Persons and Corporate Disclosure Statement of Plaintiffs-Appellants in their Opening Brief is correct and complete.

**FREEMAN MATHIS & GARY, LLP**

*/s/ Elissa B. Haynes*
Elissa B. Haynes
100 Galleria Parkway, Suite 1600
Atlanta, Georgia 30339
Telephone: 770-818-0000
Elissa.haynes@fmglaw.com

*Counsel for Defendants-Appellees*

**STATEMENT REGARDING ORAL ARGUMENT**

Defendants-Appellees respectfully submit that oral argument is not necessary because, under Fed. R. App. P. 34(a)(2)(c), "the facts and legal arguments are adequately presented in the briefs and pleadings, and the decisional process would not be significantly aided by oral argument." This case involves longstanding precedent surrounding a Rule 12(b)(6) motion to dismiss for failure to state a claim and well-settled law related to Fourth Amendment search and seizures, the Equal Protection Clause of the Fourteenth Amendment, qualified immunity, and a municipality's liability for the acts of its agents or employees. There are no novel issues of fact or law. That said, should the Court have questions or believe that oral argument would significantly aid the decisional process, Defendants-Appellees are happy to participate.

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS AND CORPORATE
DISCLOSURE STATEMENT …………………………………………C-1 of 1

STATEMENT REGARDING ORAL ARGUMENT………………………………i

TABLE OF AUTHORITIES……………………………………………....iv

INTRODUCTION………………………………………………………1

STATEMENT OF THE ISSUES……………………………………………..1

STATEMENT OF THE CASE…………………………………………………..2

      I.      BRIEF FACTUAL OVERVIEW……………………………………..2

              A. Clayton County Police Department's Drug Trafficking Airport
                 Interdiction Program………………………………………………2

                   1.  Consensual Encounter with Clayton English…………………..3

                   2.  Consensual Encounter with Eric André………………………4

      II.     PROCEEDINGS BELOW…………………………………………5

STANDARD OF REVIEW…………………………………………………...8

SUMMARY OF THE ARGUMENT………………………………………9

ARGUMENT AND CITATIONS OF AUTHORITY……………………………13

      I.      ENGLISH AND ANDRÉ'S AMENDED COMPLAINT FAILS TO
             PLAUSIBLY ALLEGE AN UNLAWFUL SEARCH AND SEIZURE
             UNDER THE FOURTH AMENDMENT…………………………..13

              A. The district court correctly held that English and André failed to
                 state a plausible claim for an unlawful seizure under the Fourth
                 Amendment as their non-detention encounters with CCPD officers
                 were brief, voluntary, and non-coercive…………………………14

B. The district court correctly found that English's voluntary and non-coerced consent to a search of his carry-on luggage did not amount to a plausible allegation of an unreasonable search under the Fourth Amendment……………………………………………20

C. Because English and André's amended complaint fails to plausibly allege violations of their Fourth Amendment right to be free from unreasonable searches and seizures, CCPD officers were entitled to qualified immunity as to such claims……………………………25

II.  ENGLISH AND ANDRÉ'S AMENDED COMPLAINT FAILS TO PLAUSIBLY ALLEGE THAT CCPD'S AIRPORT INTERDICTION PROGRAM HAD A DISCRIMINATORY EFFECT ON BLACK TRAVELERS, AND THAT THE PROGRAM WAS MOTIVATED BY A DISCRIMINATORY PURPOSE IN VIOLATION OF THE EQUAL PROTECTION CLAUSE OF THE FOURTEENTH AMENDMENT…………………………………………………...28

A. The district court properly held that English and André failed to sufficiently plead a discriminatory effect by using non-representative statistics and failing to identify a similarly situated comparator……………………………………………………30

B. The district court properly held that English and André failed to sufficiently plead that the CCPD airport interdiction program had a discriminatory purpose…………………………………………..34

C. Because English and André failed to plausibly allege an equal protection violation based on selective enforcement of CCPD's airport interdiction program, they cannot meet their burden of proving CCPD's officers are not entitled to qualified immunity…37

III.  ENGLISH AND ANDRÉ'S AMENDED COMPLAINT FAILS TO PROPERLY ALLEGE A CLAIM AGAINST CLAYTON COUNTY UNDER *MONELL*…………………………………………………..37

CONCLUSION…………………………………………………………...41

CERTIFICATE OF COMPLIANCE………………………………………..42

# TABLE OF AUTHORITIES

## CASES

*Ah Sin v. Wittman*,
  198 U.S. 500 (1905) .............................................................................29

*Ashcroft v. Iqbal*,
  566 U.S. 662, 678 (2009) ........................................... 8, 13, 21, 35, 40

*Bd. of Cnty. Com'rs of Bryan County, Okl. v. Brown*,
  520 U.S. 397 (1997) .............................................................................38

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544, 545 (2007) ................................................... 9, 13, 32, 35

*Brower v. Cnty. of Inyo*,
  489 U.S. 593 (1989) .............................................................................13

*California v. Hodari D.*,
  499 U.S. 621 (1991) .............................................................................14

*Carmichael v. Kellog, Brown & Root Services, Inc.*,
  572 F.3d 1271, 1293 (11th Cir. 2009) ..................................................6

*Carter v. Butts County, Ga.*,
  821 F.3d 1310 (11th Cir. 2016) ................................................... 12, 25

*Castaneda v. Partida*,
  430 U.S. 482 (1977) .............................................................................34

*Crenshaw v. Lister*,
  556 F.3d 1283 (11th Cir. 2009) ................................................... 12, 26

*Doe v. Sch. Bd. of Broward Cnty., Fla.*,
  604 F.3d 1248 (11th Cir. 2010) ..........................................................................41

*Florida v. Bostick,*
  501 U.S. 429 (1991) ............................................................................................20

*Greater Birmingham Ministries v. Sec'y of State for State of Ala.*,
  992 F.3d 1299 (11th Cir. 2021) ..........................................................................35

*Greech v. Clayton Cnty.*,
  335 F.3d 1326 (11th Cir. 2003) ..........................................................................38

*Hopper v. Solvay Pharmaceuticals, Inc.*,
  588 F.3d 1318, 1324 (11th Cir. 2009) ..................................................................8

*INS v. Delgado,*
  466 U.S. 210 (1984) ............................................................................................20

*McCleskey v. Kemp*,
  481 U.S. 279 (1987) ............................................................................................30

*McDowell v. Brown*,
  329 F.3d 1283 (11th Cir. 2004) ................................................................... 38, 39

*Michigan v. Chesternut*,
  486 U.S. 567 (1988) ............................................................................................15

*Monell v. New York City Dept. of Social Services*,
  436 U.S. 658 (1978) ............................................................................................38

*Noell v. Clayton Cnty.*,
  No. 1:15-CV-2404-AT, 2016 WL 11794207 (N.D. Ga. Sept. 21, 2016) ...........41

*Rooney v. Watson*,
    101 F.3d 1378 (11th Cir. 1996) ................................................... 12, 38

*Schneckloth v. Bustamonte*,
    412 U.S. 218 (1973).......................................................... 10, 16, 22, 24

*United States v. Armstrong*,
    517 U.S. 456 (1996).....................................................................29

*United States v. Armstrong*,
    722 F.2d 681 (11th Cir. 1984) ............................................................27

*United States v. Bacca-Beltran*,
    741 F.2d 1361 (11th Cir. 1984) .........................................................23

*United States v. Berry*,
    670 F.2d 583 (5th Cir. Unit B 1982) (en banc)............................. 9, 14, 15, 17, 26

*United States v. Cannon*,
    987 F.3d 924 (11th Cir. 2021); ..........................................................34

*United States v. Chemaly*,
    741 F.2d 1346 (11th Cir. 1984) ...................................................... 20, 23, 24, 27

*United States v. Drayton*,
    536 U.S. 194 (2002)......................................................... 19, 20, 22

*United States v. Gypsum Co.*,
    333 U.S. 364 (1948).......................................................................21

*United States v. Jensen*,
    689 F.2d 1361 (11th Cir. 1982) ........................................................ 11, 24, 27

*United States v. Jordan*,
  635 F.3d 1181 (11th Cir. 2011) .................................................. 28, 33

*United States v. Mendenhall*,
  446 U.S. 544 (1980) ........................................................... 10, 14, 16

*United States v. Morales*,
  893 F.3d 1360 (11th Cir. 2018) .........................................................22

*United States v. Puglisi*,
  723 F.2d 779 (11th Cir. 1984) ..........................................................27

*United States v. Quinn*,
  123 F.3d 1415 (11th Cir. 1997) ................................................... 11,29

*United States v. Spivey*,
  861 F.3d 1207 (11th Cir. 2017) .........................................................22

*Vill. of Arlington Heights v. Metropolitan Hous. Dev. Corp.*,
  429 U.S. 252 (1977) .........................................................................29

*Wakefield v. City of Pembroke Pines*,
  269 F. App. 936 (11th Cir. 2008) .....................................................41

*Whren v. United States*,
  517 U.S. 806 (1996) .........................................................................28

**Statutes**

42 U.S.C. § 1981 ...........................................................................6, 7

**Other Authorities**

U.S. Const. amend. IV ..............................................................................2

# STATEMENT OF THE ISSUES

**I.** Whether the district court correctly dismissed English and André's Fourth Amendment claims when their amended complaint failed to plausibly allege an unlawful seizure resulting from consensual and voluntary encounters in a public space with other passengers around, CCPD officers asking them general questions in the name of combatting drug trafficking while their government identifications were held for a minimal time, and where English freely and voluntary consented to a search of his luggage.

**II.** Whether the district court correctly dismissed English and André's equal protection claims when their amended complaint did not plausibly allege that the airport interdiction program had a discriminatory effect or purpose due to English and André's failure to allege different treatment was given to similarly situated travelers of other races and that CCPD operated the interdiction program because of its adverse effects on Black passengers.

**III.** Whether the district court correctly found that English and André's amended complaint failed to state a plausible claim against Clayton County under *Monell* where the allegations in the complaint failed to sufficiently allege English and André's constitutional rights were

violated, and that the airport interdiction program was adhered to by the County with widespread deliberate indifference.

## STATEMENT OF THE CASE

### I. BRIEF FACTUAL OVERVIEW

#### A. Clayton County Police Department's Drug Trafficking Airport Interdiction Program

To combat drug trafficking and the exchange of drug-related cash proceeds, the Clayton County Police Department ("CCPD") operated an "Airport Interdiction Unit"—also known as the "Clayton County Narcotics Unit-Airport Investigations Group—at Atlanta Hartsfield-Jackson International Airport. (Doc. 24 ¶¶ 6, 61). Through this Unit and interdiction program, CCPD officers, along with Clayton County District Attorney's Office ("CCDAO") investigators were stationed in jet bridges (the tunnel which connects an airplane to its assigned gate) to selectively intercept passengers, inspect their boarding passes and government identification, record identifying information about the passenger in a log book, ask questions about the purpose of the passenger's trip and whether they are carrying illegal drugs or large amounts of currency, and, in some cases, search their carry-on luggage. (*Id*. ¶¶ 2, 64).

Plaintiff-Appellants Clayton English and Eric André—both Black, internationally-celebrated stand-up comedians, actors, and writers—allege that they were intercepted in jet bridges by plain clothed CCPD officers and CCDOA

2

investigators at the Atlanta airport just months apart while trying to board their Delta flights from Atlanta to Los Angeles. (*Id*. ¶¶ 9, 11-12, and 23- 59). English and André allege that CCPD's airport interdiction program relies on coercion, and disproportionally targets Black people. (*Id*. ¶¶ 1-2). But the CCPD and CCDAO assert that these brief exchanges were both random and consensual. (*Id*. ¶ 62).

## 1. Consensual Encounter with Clayton English

While boarding his flight from Atlanta to Los Angeles for work in October 2020, English alleges that he was approached by two plain clothes CCPD officers (Defendants-Appellees Tony Griffin and Kayin Campbell) with badges around their necks—while other passengers were in front of and behind him—and was questioned about whether he was carrying illegal drugs. (*Id*. ¶¶ 31-33). After informing the officers that he was not, he claims the officers then started asking about specific drugs by name which he likewise informed them he was not carrying. (*Id*. ¶ 33). After answering a few questions, English alleges that he complied with the CCPD officer's request for him to step to the side of the jet bridge where one officer stood on either side of him. (*Id*. ¶¶ 35-36). He then alleges an officer asked him to hand over his government identification and boarding pass, which he likewise complied with. (*Id*. ¶ 37). With English's ID and boarding pass in hand, English alleges the officers continued to ask him questions about whether he was carrying illegal drugs and the purpose of his trip, while

English remained in the presence of other passengers boarding his flight. (*Id*. ¶¶ 38-39). Finally, English alleges that one officer asked if he could search his bag and he consented to the search. (*Id*. ¶ 41). Once his bag was searched, the officers returned his ID and boarding pass and told him that he was free to board his flight. (*Id*. ¶¶ 42-44).

## 2. Consensual Encounter with Eric André

Six months after English's encounter, André completed a television shoot in South Carolina and was boarding a connecting flight from Atlanta to Los Angeles. (*Id*. ¶ 47). André had a Business Class ticket and boarded through Delta's priority boarding line. (*Id*. ¶ 50). After walking part way down the jet bridge tunnel, André alleges that he was approached by CCPD officer Aimee Branham and CCDAO investigator Michael Hooks[1]—who were both in plain clothes with badges around their necks—and questioned about whether he was carrying various illegal drugs, which he denied, and about his travel plans. (*Id*. ¶¶ 50, 55). Like English, André was asked to hand over his government ID and boarding pass and André complied. (*Id*. ¶ 55). André remained on the jet bridge surrounded by other passengers boarding his flight while being questioned. (*Id*. ¶ 57). Unlike English, no one asked to search André's bag. (*Id*. ¶ 58). André alleges that the entire encounter lasted

---

[1] André further asserts that another CCPD officer, Kevin Campbell, was also present. (Doc. 24 ¶ 51).

about five minutes before he was told by the officers that he was free to board the plane. (*Id*.).

## II.    PROCEEDINGS BELOW

Following these encounters, neither of which led to an arrest, English and André sued Clayton County, Georgia ("County"), CCPD Chief Kevin Roberts ("Chief Roberts") in his official capacity, CCPD Officers Branham, Griffin, and Campbell in their individual and official capacities, CCPD Sergeant Cameron Smith ("Sergeant Smith") in his individual and official capacity, and CCDAO investigator Michael Hooks in his individual and official capacity. (Doc. 24). Both English and André asserted claims against all Defendants-Appellees for conducting unlawful seizures on the jet bridge under the Fourth Amendment (*Id*. ¶¶ 114-121), violations of the Equal Protection Clause of the Fourteenth Amendment based on race discrimination (*Id*. ¶¶ 128-134), and violations of the Civil Rights Act of 1866, also based on race discrimination surrounding CCPD's interdiction program. (*Id*. ¶¶ 135-142). English also asserted a claim against the County, Chief Roberts, Griffin, Campbell, and Sergeant Smith for unlawful search under the Fourth Amendment. (*Id*. ¶¶ 122-127). Lastly, English and André sought declaratory relief,

punitive damages, and attorney's fees against all Defendants-Appellees. (*Id*.,

Request for Relief).[2]

Defendants-Appellees moved to dismiss each of English and André's claims

under Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be

granted (Docs. 25, 25-1). The Honorable Mark H. Cohen properly granted their

motion in a 54-page, well-reasoned opinion, relying on binding precedent from this

Court, as well as the United States Supreme Court. (Doc. 40). The district court

dismissed English and André's Fourth Amendment unlawful seizure claims, as

well as English's Fourth Amendment unlawful search claim—as the United States

Supreme Court has done in other similar airport encounter cases—on grounds that

both encounters (and English's search) were voluntary, consensual, did not involve

detainment, and were not accusatory or otherwise threatening. (*Id*. at 15-35). The

district court likewise dismissed English and André's Equal Protection claims. The

Court found that (1) English and André failed to sufficiently plead facts showing

similarly situated individuals of a difference race received different or more

---

[2]     Although English and André's amended complaint includes claims against
each Defendant-Appellee for violation of the Civil Rights Act of 1866 under 42
U.S.C. § 1981 (Doc. 24, Fourth Cause of Action), allegations of supervisory
liability for claims brought against CCPD Sergeant Cameron Smith (*Id*. ¶¶ 10, 70,
82), and requests for declaratory relief, attorney's fees, and punitive damages (*Id*.
at Request for Relief), their merits brief fails to address these claims, allegations,
or requested relief. (Doc. 36). As such, they are deemed abandoned, and their
merits must not be addressed by this Court. *Carmichael v. Kellog, Brown & Root
Services, Inc.*, 572 F.3d 1271, 1293 (11th Cir. 2009).

favorable treatment than they did (*Id*. at 37-39); (2) failed to plausibly allege that the airport interdiction program had a discriminatory effect on Black travelers by relying on statistics which did not address the demographics of those subject to the interdiction program at the Atlanta airport (*Id*. at 39-42); and (3) failed to plausibly allege that the interdiction program was motivated by a discriminatory purpose. (*Id*. at 42-45).

The district court next dismissed Eric and André's 42 U.S.C. § 1981 claims for failure to allege a plausible constitutional violation. (*Id*. at 45-48). And because of this, the Court found that their *Monell* claim failed as well and was subject to dismissal. (*Id*. at 48).[3]

Lastly, the district court correctly found these other grounds for dismissal: (1) that English and André's official capacity claims against the CCPD officers were duplicative of their claims against the County, (2) that because English and André failed to plausibly allege any constitutional violation,[4] Branham, Hooks,

---

[3]    Alternatively, the district court found that even if English and André's amended complaint had successfully plead a constitutional violation, dismissal of their *Monell* claim would still be required. This is because their amended complaint fails to allege facts showing a widespread pattern of conduct of Defendants-Appellees "so permanent and well settled as to constitute a custom or policy. (Doc. 40 at 48, n.13).

[4]    The district court noted, however, that even if English and André had properly plead a Fouth Amendment violation for unlawful search or seizure, they would have failed to meet their burden of proving qualified immunity should not

Griffin, Campbell, and Seargeant Smith were entitled to qualified immunity for claims against them in their individual capacities and Supervisor Smith could not be held liable under a theory of supervisory liability, and (3) because English and André's constitutional claims were dismissed, a claim for declaratory relief, as well as derivative claims for attorney's fees and punitive damages, could not be sustained as a matter of law. (*Id*. at 49-53). This appeal followed.

## STANDARD OF REVIEW

This Court reviews de novo a district court's dismissal of a complaint under Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief may be granted. *Hopper v. Solvay Pharmaceuticals, Inc.*, 588 F.3d 1318, 1324 (11th Cir. 2009).

To survive a motion to dismiss, a complaint must contain sufficient factual statements, which, accepted as true state a plausible claim for relief on its face. *Ashcroft v. Iqbal*, 566 U.S. 662, 678 (2009). A claim is plausible on its face if there is a "reasonable inference that the defendant is liable for the misconduct alleged." *Id*. But contrary to English and André's assertion that "[a] court must accept the complaint's factual allegations as true[,]" this rule does not apply to legal conclusions or conclusory statements. *Id*. (cleaned up) (holding allegations in a

---

apply to such claims under longstanding and binding precedent from this Court and the United States Supreme Court. (Doc. 40 at 50-52).

8

complaint such as "[P]etitioners knew of, condoned, and willfully and maliciously subjected Respondent to harsh conditions of confinement as a matter of policy, solely on account of [his] religion, race, and/or national origin . . ." to be insufficient to presume as true); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007) (finding a complaint "requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do.).

## SUMMARY OF THE ARGUMENT

The district court correctly followed binding precedent from this Court and the United States Supreme Court when dismissing English and André's constitutional claims against CCPD officers, CCDAO investigators, and Clayton County.

First, the district court correctly found that English and André's amended complaint failed to plausibly allege an unlawful search and seizure. The complaint primarily relies on the inapposite case of *United States v. Berry*, 670 F.2d 583 (5th Cir. Unit B 1982) (en banc)[5] which English and André incorrectly represent sets forth mandatory factors the court must consider as part of the totality of circumstances when determining whether an airport encounter constitutes a seizure under the Fourth Amendment. Yet the court in *Berry* noted that its factors were

---

[5] Both the district court and parties acknowledge below that a Unit B decision from the former Fifth Circuit serves as binding precedent in this Court. (Doc. 40 at 15, n.4).

simply ones that other courts *should*—not must—consider or give greater weight to. These factors include whether an officer blocks one's path, whether an officer retain a traveler's government ID and boarding pass for more than a minimal amount of time, and whether the officer makes statements implying that the traveler has been suspected of committing a crime. 670 F.2d at 597.

The district court, after assessing the *Berry* factors, as well as the factors set forth in *United States v. Mendenhall*, 446 U.S. 544, 554 (1980) and *Schneckloth v. Bustamonte*, 412 U.S. 218, 226 (1973) correctly found that the amended complaint failed to plausibly allege an unlawful search or seizure. As to English and André's seizure claims, the complaint shows that they were briefly questioned by CCPD officers in a jet bridge with several of their fellow passengers around (as opposed to being escorted to a private room where a reasonable person would likely not feel free to leave); their ID's and boarding passes were held for a minimal amount of time; the officers' questions did not imply either English or André were accused of a crime, but merely consisted of general questions to combat drug trafficking; there were no allegations of brandishing weapons or speaking in a threatening tone; and both English or André were of ample age and intelligence to understand their constitutional rights. Under controlling precedent, the district court properly dismissed their Fourth Amendment seizure claims.

In addition to asserting an unlawful seizure claim, English brought a Fourth Amendment claim for an unconstitutional search. But the amended complaint merely alleges that English's consent was coerced because he believed he had no choice but to consent to the search. (Doc. 24 ¶ 41). English's subjective belief has no relevance and this Court, in the factually analogous case of *United States v. Jensen*, found that where statements made by officers indicate no more than a general inquiry into crime and there was no plausible allegation to support that one's consent was involuntary, the consensual search is not unconstitutional. 689 F.2d 1361, 1363-64 (11th Cir. 1982)

Second, English and André's amended complaint fails to plausibly allege selective enforcement of CCPD's airport interdiction program based on race in violation of the Equal Protection Clause because there was no discriminatory effect of the program, nor was the program motivated by a discriminatory purpose.  As the district court correctly found, English and André failed to show a similarly situated individual *of another race or ethnicity* which was subjected to the same interdiction program but treated differently than them, as required by *United States v. Quinn*, 123 F.3d 1415, 1426 (11th Cir. 1997). Similarly, the complaint fails to plausibly allege that CCPD's airport interdiction program was motivated by a discriminatory purpose where there is nothing but legal conclusions or a recital of a claim's elements to prove such purpose.

Third, the district court correctly determined that because English and André concede the individual CCPD officers were performing discretionary functions during operation of the airport interdiction program, English and André failed to meet their burden of proving that the officers were not entitled to qualified immunity. *Carter v. Butts County, Ga.*, 821 F.3d 1310, 1319 (11th Cir. 2016). The complaint fails to plausibly allege the first prong of the qualified immunity analysis, a constitutional violation, and even if it had, the complaint fails to plausibly allege the second prong which is establishing whether the constitutional right at issue was clearly established. *Crenshaw v. Lister*, 556 F.3d 1283, 1293 (11th Cir. 2009). In support of the second prong, English and André solely rely on the factually distinguishable *Berry* case. And unlike in *Berry*, CCPD officers did not ask English or André to accompany them to a private office away from their fellow passengers, nor did they expressly state or insinuate that English or André had violated a law.

Lastly, the district court correctly held that English and André failed to properly allege a claim against Clayton County under *Monell* because there was no underlying constitutional violation. *Rooney v. Watson*, 101 F.3d 1378, 1381 (11th Cir. 1996). Even if there had been, the amended complaint fails to plausibly allege that CCPD's airport interdiction program was adhered to with deliberate indifference. As to this deliberate indifference element, the complaint provides

nothing more than legal conclusions and recitations of the elements for a *Monell* claim which the United States Supreme Court in *Iqbal*, 566 U.S. at 678, and *Twombly*, 550 U.S. 544 at 554, found to be insufficient to accept as true.

## ARGUMENT AND CITATIONS OF AUTHORITY

**I. ENGLISH AND ANDRÉ'S AMENDED COMPLAINT FAILS TO PLAUSIBLY ALLEGE AN UNLAWFUL SEARCH AND SEIZURE UNDER THE FOURTH AMENDMENT.**

The Fourth Amendment to the United States Constitution—which provides "[t]he right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures"—serves as a cornerstone of our nation's commitment to an individual's privacy and liberty. *Brower v. Cnty. of Inyo*, 489 U.S. 593, 595 (1989). At the same time, the Fourth Amendment must operate within a framework which acknowledges the necessity of certain law enforcement activities and the need for balanced approaches to public safety. Neither party contends that every police encounter with an individual or every search of one's belongings amounts to a constitutional violation. CCPD and CCDAO's voluntary, consensual, and brief questioning of English and André did not constitute an unreasonable seizure, nor did the consensual and non-coerced search of English's carry-on bag constitute an unreasonable search under the Fourth Amendment.

**A.** **The district court correctly held that English and André failed to state a plausible claim for an unlawful seizure under the Fourth Amendment as their non-detention encounters with CCPD officers were brief, voluntary, and non-coercive.**

The purpose of the Fourth Amendment is not to transform all communications between an individual and a law enforcement officer into adversarial encounters. *United States v. Berry*, 670 F.2d at 291. English and André's amended complaint repeatedly states that both men held the subjective belief that they were not free to leave and had to comply with each request relayed to them during their voluntary encounters on the jet bridge. (Doc. 24 ¶¶ 34-35, 37, 41, 45, 54-55). But what English or André personally believed is of no relevance here.

In *Mendenhall*, the Supreme Court considered whether seizures occurred in the context of airport stops. 446 U.S. at 544. The Court held that a person is seized "only when, by means of physical force or a show of authority, his freedom of movement is restrained." *Id.* at 547, 553. Put differently, "a person has been seized within the meaning of the Fourth Amendment only if, in view of all the circumstances surrounding the incident, a *reasonable person* would have believed that he was not free to leave." *Id.* at 554; *California v. Hodari D.*, 499 U.S. 621, 627-28 (1991) (finding that the *Mendenhall* test for the existence of a "show of authority" is objective and involves an assessment as to whether a reasonable person would have perceived that he was being ordered to restrict his movement

based on the officer's words and actions). "[I]noffensive contact between a member of the public and the police cannot, as a matter of law, amount to a seizure of that person." *Id.* at 555.

A little over a decade later, the United States Supreme Court emphasized that the Court in *Mendenhall* carefully phrased its holding, finding that a person has been seized "*only if*," not "*whenever,*" that person states "a *necessary*, but not a *sufficient*, condition for seizure . . ." *California v. Hodari D.*, 499 U.S. at 628. A Fourth Amendment seizure analysis is "fact-specific" and depends on a "totality of circumstances." *Michigan v. Chesternut*, 486 U.S. 567, 572 (1988).

Here, English and André rely almost exclusively on the significantly distinguishable case of *United States v. Berry*, which they imply sets forth *mandatory* factors that this Court must consider in determining whether an airport encounter constitutes a seizure under the Fourth Amendment. (Doc. 36 at 25). But the Court in *Berry* merely noted that there are specific factors which courts *should*—not must—place great weight in when analyzing whether an airport stop amounts to a seizure. 670 F.2d at 597. These factors, which the district court below properly considered, include whether an individual's path was obstructed, whether an individual's boarding pass was retained for "more than a minimal amount of time," and whether officers told individuals that they are suspected of smuggling

drugs, such that the reasonable person would believe that an investigation is focused specifically on them. *Id*. (cleaned up).

The Courts in *Mendenhall* and *Schneckloth v. Bustamonte*, 412 U.S. at 218 provide other relevant factors for courts to consider in determining whether a seizure occurred. The *Mendenhall* factors include "the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled." 446 U.S. at 554 (plurality opinion of Stewart, J.) The Court in *Bustamonte* added consideration of the age, education, and intelligence of the person being questioned; whether the person was advised of his constitutional rights; the length of the stop; the repeated and prolonged nature of the questioning; and the use of physical punishment such as deprivation of food or sleep to encourage participation. 412 U.S. at 226.

Although not acknowledged in English and André's merits brief, the Court in *Berry* also distinguished an airport stop from an officer pulling an automobile over in a *Terry* stop by stating:

> The panoply of authority that may be present when an automobile is pulled over-an official vehicle, flashing lights, a blaring siren-do not appear in airport stops, nor is the interference with an individual's movement, and perhaps even the time lost during the stop, the same. … Moreover, the government interests involved in interdicting drug traffic is even greater than that involved in regulating safety on the roadways.

*Id*. at 593. The Court emphasized that during an airport stop, "[s]tatements which intimate that an investigation has focused on a specific individual easily could induce a reasonable person to believe that failure to cooperate would lead only to formal detention." *Id*. at 597. And regarding an individual's consent to participate in an officer's questioning, the Court noted the concern for constitutional violations would be greater "when police ask individuals to accompany them to an office . . ." *Id*. at 598.

When looking to the totality of circumstances and the factors set forth in *Berry, Mendenhall,* and *Bustamonte*, English and André's amended complaint falls far short of plausibly pleading unlawful seizures under the Fourth Amendment. English and André were briefly[6] questioned by one or two officers in a jet bridge with several of their fellow passengers around rather than a private police office or other enclosed space shielded from the public. (Doc. 24 ¶¶ 31, 39, 57, 58). This is factually comparable and no more intrusive than the time required by travelers to submit to additional x-ray screening or a pat down by a TSA agent. And it is even less intrusive than when a passenger's carry-on luggage gets selected for a second random search at a TSA checkpoint which results in the passenger having to wait potentially several minutes for a TSA agent to one-by-one remove items from their

---

[6]    Andre alleges that time he remained in the jet bridge and during the officer's questioning, was approximately five minutes. (Doc. 24 ¶ 58).

bag before re-packing such bag and allowing the passenger to proceed through security. English and André further contend that they could rest their case entirely on the length of time the officers held onto their government ID's during questioning. Yet this position starkly contradicts English and André's criticism of the district court which they claim erred in viewing various factors "in isolation, rather than as contributing to the totality of the circumstances." (Doc. 36 at 26).

Further, neither English nor André alleges that the officers displayed weapons, physically touched them, used physical punishment, or used a threatening or intimidating tone while questioning them. (*Id.* ¶¶ 9-59). It is also clear from English and André's amended complaint that their age, education, and intelligence fail to tip the scale in favor of finding an unlawful search as they identify themselves as "internationally-celebrated stand-up comedians, actors, and writer[s]" and concede that they understood airport security protocols such as TSA screening requirements. (*Id.* ¶¶ 11-12, 26-28, 48).

English and André's amended complaint and merits brief also spill significant ink on the fact that their encounters occurred in a narrow jet bridge with officers blocking their path of travel, therefore elevating their encounters to a seizure.[7] (Doc. 24 ¶¶ 31, 36, 51, 57; *see also* Doc 36 at 5, 19-22, 24, 28). But as

---

[7] Again, English and André's isolated focus on the location of their encounters contradicts their argument that the district court erred in considering

the district court noted, an officer's positioning between a passenger and an exit, as well as the fact that questioning occurred in a narrow space, does not lead to the conclusion that the passenger was prevented from exiting or that a reasonable person would not have felt free to leave. (Doc. 40 at 23-25). In *United States v. Drayton*[8], passengers on a bus were questioned by plain clothes police officers as part of a routine drug and weapon interdiction effort. 536 U.S. 194, 197 (2002). During questioning, there was an officer at both the front and rear of the bus, and like in English's encounter, the questioning investigator "stood next to or just behind each passenger with whom he spoke." *Id.* at 198. The Court held that the fact that this encounter took place in the narrow aisle of a bus rather than on the street does not transform the encounter into an illegal seizure. *Id.* at 204. The Court even went as far to acknowledge that like in English and André's case where other passengers witnessed their encounters with CCPD officers, the fact that the questioning in *Drayton* occurred while other passengers were around supports

---

factors in isolation rather than as part of the totality of circumstances surrounding the encounter. (Doc. 36 at 26).

[8]    English and André criticize the district court's reliance on *Drayton*, *Delgado*, and *Bostick,* arguing those cases are "explicitly" distinguishable because the individuals questioned had no desire to leave, rendering the "free-to-leave" framework inapplicable. But none of these cases cited by the district court found a seizure based on a "non-desire" to leave. (Doc. 36 at 29).

finding that "a reasonable person may feel even more secure in his or her decision not to cooperate with police . . ." *Id*. Similarly, in *INS v. Delgado*, the Court found no seizure occurred even though several uniformed INS officers were stationed at the exits of a factory while factory workers were questioned to determine whether they were illegal aliens. 466 U.S. 210, 211-12 (1984). Lastly, in *Florida v. Bostick*, the Court acknowledged that while a bus rider's movements are confined in a sense, based on them being on a bus and fearing that if they left the bus, the bus could re-board and leave without them, "this is the natural result of choosing to take the bus; it says nothing about whether the police conduct is coercive." 501 U.S. 429, 436 (1991).

Thus, accepting English and André's allegations as true, and viewing such allegations as part of a totality of circumstances rather than isolated factors, the district court correctly found that English and André's amended complaint failed to plausibly allege an unlawful seizure in violation of the Fourth Amendment.

**B.    The district court correctly found that English's voluntary and non-coerced consent to a search of his carry-on luggage did not amount to a plausible allegation of an unreasonable search under the Fourth Amendment.**

A trial court's determination of one's voluntariness of consent to a search of his person and belongings is reviewed under a clearly erroneous standard. *United States v. Chemaly*, 741 F.2d 1346 (11th Cir. 1984). "A finding is clearly erroneous

when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. Gypsum Co.*, 333 U.S. 364, 395 (1948). The district court's finding that English failed to plausibly allege an unreasonable search based on coercion—when his amended complaint solely included a conclusory allegation that he was coerced without any supporting facts—was not clearly erroneous and must be upheld.

English's amended complaint alleges that as he was being questioned by CCPD officers who had possession of his ID and boarding pass, he was asked if his carry-on bag could be searched. (Doc. 24 ¶ 41). He then alleges that "[b]elieving he had no choice, Mr. English acquiesced." (*Id.*) But nowhere in the amended complaint does English plead facts to support *how* he was coerced into consenting to the search. Instead, the complaint simply asserts that "Mr. English provided no voluntary consent for [the] search that was free from coercion or independent of the illegal seizure that preceded it." (*Id*. ¶ 124). This is precisely the type of legal conclusion or conclusory allegation which a court is not required to accept as true at the motion to dismiss stage. *Iqbal*, 566 U.S. at 678.

The Fourth Amendment protects one's right to be free from unreasonable searches. U.S. Const. amend. IV. This Court and the United States Supreme Court have held that a warrantless search is reasonable if law enforcement obtains

voluntary consent to the search. *United States v. Morales*, 893 F.3d 1360, 1367

(11th Cir. 2018) (cleaned up); *Bustamonte*, 412 U.S. at 219. "Voluntariness,"

however, "cannot be taken literally to mean a knowing choice." *Bustamonte*, 412

U.S. at 224. In determining whether a consent to a search was voluntary, the Court

must look to the totality of all surrounding circumstances, including the

"characteristics of the accused and the details of the interrogation." *Id*. at 226.

Some circumstances to consider include

> the voluntariness of the defendant's custodial status, the presence of
> coercive police procedure, the extent and level of a defendant's
> cooperation with police, the defendant's awareness of his right to refuse
> to consent to the search, the defendant's education and intelligence,
> and, significantly, the defendant's belief that no incriminating evidence
> will be found.

> *United States v. Spivey*, 861 F.3d 1207, 1213 (11th Cir. 2017). As for a

defendant's awareness of his right to refuse consent to a search, our courts have

rejected "the suggestion that police officers must always inform citizens of their

right to refuse when seeking permission to conduct a warrantless search." *Drayton*,

536 U.S. at 205-206. Here, English's amended complaint fails to plausibly allege

that he was unlawfully seized. Nor does the complaint show any facts—much less

sufficient facts—to support a finding that English's consent was anything but

voluntary.

In his merits brief, English contends that his encounter was "strikingly similar" to the plaintiff's encounter in *Chemaly*.[9] (Doc. 36 at 32). *Chemaly* was a border search case that involved a plaintiff who was questioned at the end of a jetway, asked to hand over his passport and boarding pass, and who provided consent to officers for a search of his property *and* person. 741 F.2d at 1349. There, the Eleventh Circuit held that Chemaly's consent was involuntary. *Id*. at 1353. In support of this finding, the Court noted the officer's questions signaled that Chemaly was suspected of crime rather than merely being part of a random interception to crack down on crime. *Id*. The Court further determined that after considering the totality of circumstances, a reasonable person would have believed a failure to cooperate would lead to formal detention. *Id*. Unlike *Chemaly*, English's amended complaint does not plausibly allege that the officers made statements to him which demonstrated that he was guilty of smuggling drugs or that they retained his ID for more than a short time. English was simply asked if he was carrying illegal drugs. (Doc. 24 ¶ 38).

---

[9]     English's merits brief also cites to *United States v. Bacca-Beltran*, 741 F.2d 1361, 1362-63 (11th Cir. 1984), which like *Chemaly*, involved a border search found to be involuntary based on the Court's decision in *Chemaly*.

This case is much more analogous, as the district court found, to *Jensen*, 689 F.2d at 1361.[10] In *Jensen*, DEA agents approached Jensen after deplaning his flight from Miami to Atlanta. *Id*. at 1362. The agents asked if they could speak with him, and Jensen consented. *Id*. The agents then asked for his ID and plane ticket, which Jensen likewise voluntarily provided. *Id*. Like the questions posed by CCPD officers to English, the DEA agents asked Jensen if he was carrying illegal drugs and Jensen responded that he was not. *Id*. Finally, the agents asked if they could search him, took him to an airline office, and Jensen consented to a search. *Id*.

Jensen alleged that the DEA agents unlawfully seized him when he was asked to consent to a search of his luggage, but the Eleventh Circuit disagreed. *Id*. at 1363. Upon reviewing the totality of the circumstances, the Court found that the DEA agents' statements and questions to Jensen "indicated no more than an interrogation as part of a more general inquiry into drug smuggling." *Id*. at 1363. The Court further found that nothing in the agents' questioning would have implied to a reasonable person that they were not free to leave. *Id*. at 1364; *see also Bustamonte*, 412 U.S. at 232 (noting that "[g]eneral on-the-scene questioning as to

---

[10]    English and André's merits brief attempts to distinguish *Jensen* by stating that the question in *Jensen* was whether a seizure occurred and not whether his consent to a search was coerced. (Doc. 36 at 33, n.6). This distinction is without merit as this Court has acknowledged that "factors involved in a seizure are also relevant in determining the voluntariness of consent for a search. *Chemaly*, 741 F.2d at 1352.

facts surrounding crime does not lead to a finding of involuntariness as "[i]t is an act of responsible citizenship for individuals to give whatever information they may have to aid in law enforcement.")

Upon assessing the totality of circumstances of English's search by accepting the non-conclusory allegations in English's amended complaint as true, the district court was not clearly erroneous in finding that English failed to plausibly allege an unconstitutional search under the Fourth Amendment.

**C.** **Because English and Andre's amended complaint fails to plausibly allege violations of their Fourth Amendment right to be free from unreasonable searches and seizures, CCPD officers were entitled to qualified immunity as to such claims.**

English and André's merits brief argues that their claims against Branham, Hooks, Grifin, Campbell, and Sergeant Smith, in their individual capacities, are not barred by qualified immunity. (Doc. 36 at 34). Qualified immunity protects law enforcement officials from being sued in their individual capacities for discretionary actions performed in the course of their duties. *Carter*, 821 F.3d at 1318. Here, English and André concede that the functions performed by CCPD officers were discretionary. (Doc. 24 ¶¶ 15-20). Thus, the burden shifts to English and André to prove that qualified immunity is inappropriate. *Carter*, 821 F.3d at 1319. For English and André to do so, they must establish that (1) each officers'

conduct violated a constitutionally protected right and (2) that the right was clearly established at the time of the misconduct. *Id*.

Because the four corners of English and André's amended complaint do not plausibly allege a constitutional violation, the district court properly found that it did not need to address the second prong of the qualified immunity analysis. *Crenshaw v. Lister*, 556 F.3d at 1293(finding where there is no constitutional violation, the court need not address whether the constitutional right at issue was clearly established.") But even if this Court were to find that English and André properly pled a Fourth Amendment violation as to the allegedly unlawful seizures of English and André or the allegedly unlawful search of English, both English and André failed to meet their burden of proving qualified immunity should not apply.

The sole argument asserted by English and André's merits brief is that they have met their burden of proving the second prong of the qualitied immunity analysis by "pointing to a material similar case that has already decided that what the police officer was doing was unlawful." (Doc. 36 at 34) (cleaned up). The sole case relied upon by English and André in support of this position for their unlawful seizure claim is *Berry* which listed *some*—not all—factors that might be relevant to finding an unlawful search or seizure. 670 F.2d at 597 (cleaned up). But the facts of *Berry* are inapplicable here. Unlike in *Berry*, the CCPD officers did not ask English or André to accompany them to them to a private office away from their

fellow passengers, nor did they expressly state or insinuate that English or André had violated a law. *Id*. at 588-89.

As the district court found, other "materially similar" cases from this Court and the United States Supreme Court have found that similar law enforcement activity to that performed by CCPD officers did not result in an unconstitutional seizure. *United States v. Armstrong*, 722 F.2d 681, 685 (11th Cir. 1984) (finding no seizure when a detective retained the plaintiff's identification for only a short time); *United States v. Puglisi*, 723 F.2d 779, 783-84 (11th Cir. 1984) (finding no seizure occurred during an encounter where the officer spoke in a non-threatening tone, asked questions about the plaintiff's identification, moved the plaintiff to a private location to conduct a frisk search, and did not tell the plaintiff he was a suspected criminal); *Jensen*, 689 F.2d at 1363 (finding no seizure when the officer's questioning revealed no more than an interrogation as part of a more general inquiry into drug smuggling).

English likewise failed to meet his burden of proving that qualified immunity did not apply to his Fourth Amendment unlawful search claim against the CCPD officers in their individual capacities based on the same cases finding no evidence of an unlawful seizure. *Chemaly*, 741 F.2d at 1352 (noting the factors from a seizure analysis are relevant in determining the voluntariness of consent for a search). Accordingly, accepting the factual allegations in English and André's

amended complaint as true and drawing all inferences in their favor, the district court correctly held that qualified immunity applied to the claims against CCPD officers in their individual capacities.

II. **ENGLISH AND ANDRÉ'S AMENDED COMPLAINT FAILS TO PLAUSIBLY ALLEGE THAT CCPD'S AIRPORT INDERDICTION PROGRAM HAD A DISCRIMINATORY EFFECT ON BLACK TRAVELERS, AND THAT THE PROGRAM WAS MOTIVATED BY A DISCRIMINATORY PURPOSE IN VIOLATION OF THE EQUAL PROTECTION CLAUSE OF THE FOURTEENTH AMENDMENT.**

Count Three of English and André's amended complaint alleges that CCPD's and CCDAO's stops violated their Fourteenth Amendment equal protection rights as they were "singled [] out on the basis of race." (Doc. 24 ¶ 131). The complaint further alleges that the county and its officers operated this program knowing of its discriminatory effect and with deliberate indifference to English and André's constitutional rights. (*Id.* ¶ 133).

The Equal Protection Clause protects individuals from "selective enforcement of the law based on considerations such as race." *Whren v. United States*, 517 U.S. 806, 813 (1996). Individuals complaining unconstitutional selective enforcement bear a "demanding" burden. *United States v. Jordan*, 635 F.3d 1181, 1188 (11th Cir. 2011).

For English and André to succeed on their selective enforcement claim at the motion to dismiss stage, they must plausibly allege that the airport interdiction

program (1) had a discriminatory effect and (2) was motivated by a discriminatory purpose. *See United States v. Armstrong*, 517 U.S. 456, 465 (1996). To prevail on a selective law enforcement claim based on race, a plaintiff must show that a similarly situated individual *of another race or ethnicity* could have been subjected to the same law enforcement action as the plaintiff but was not. *Id*. at 465 (cleaned up); *see also Ah Sin v. Wittman*, 198 U.S. 500, 507-08 (1905) (holding a Chinese plaintiff's selective enforcement allegation that an ordinance was only enforced against Chinese people was insufficient as the plaintiff failed to allege "that there were other offenders against the ordinance than the Chinese as to whom it was not enforced."); *United States v. Quinn*, 123 F.3d 1415, 1426 (11th Cir. 1997) ("The threshold for showing some evidence tending to show the existence of the discriminatory effect element is some evidence of differential treatment of similarly situated members of other races or protected classes.") (cleaned up).

But proof of a racially discriminatory effect alone is insufficient. *Vill. of Arlington Heights v. Metropolitan Hous. Dev. Corp.*, 429 U.S. 252, 264-65 (1977). A plaintiff must also show that law enforcement's actions were motivated by a discriminatory purpose. *Id*. Discriminatory purpose "implies more than intent as volition or intent as awareness of consequences." *McCleskey v. Kemp*, 481 U.S. 279, 298 (1987). It implies that the decisionmaker . . . selected or reaffirmed a particular course of action at least in part because of, not merely in spite of, its

adverse effects upon an identifiable group." *Id.* (cleaned up). Here, the district court correctly found that English and André's amended complaint failed to plausibly allege either a discriminatory effect or purpose.

> **A.    The district court properly held that English and André failed to sufficiently plead a discriminatory effect by using non-representative statistics and failing to identify a similarly situated comparator.**

First, the district court correctly held that English and André fail to sufficiently identify that the airport interdiction program treated similarly situated individuals of a different race differently. English and André first contend that their complaint appropriately identifies similarly situated comparators "by setting out the racial disparities in CCPD's treatment of Black versus White travelers." (Doc. 36 at 36-44). Specifically, they claim that their complaint alleges that they were singled out for questioning while allowing other passengers to board their flight. (*Id*. at 36-37). But the only allegation in the complaint is that André saw no other Black passengers boarding in the Business Class category with him. (Doc. 24 ¶ 50). The complaint says nothing about the racial composition of other (White or other ethnicity) passengers boarding André's flight.

The only other "comparators" identified in the amended complaint were Black passengers Jean Elie and Preston Lewis who were also allegedly stopped on the jet bridge at the Atlanta airport by CCPD officers on different dates. (*Id*. ¶¶ 93-

112). As the district court noted, "there is not one allegation in the Amended Complaint that references a similarly situated White comparator to Plaintiffs." (i.e., White passengers boarding flights from Atlanta to Los Angeles where CCPD officers were waiting in the jet bridge who were *not* stopped and questioned.) (Doc. 40 at 39).

Lastly, while first asserting that they sufficiently identified similarly situated comparators, English and André then admonish the district court for its reliance on cases where the challenged action was not random as CCPD's program represents to be, claiming only law enforcement actions which were *not* random required evidence of a similar comparator. (Doc. 36 at 38-39). But English and André cite no authority which says a plaintiff need not show a similarly situated comparator to prevail on a selective enforcement claim based on race.

Second, English and André's statistics about the racial disparity between White and Black passengers who were stopped as part of the airport interdiction program do not plausibly allege a discriminatory effect. English and André's amended complaint asserts that under the airport interdiction program, for the 378 of the 402 documented jet bridge stops during an eight-month period, 211 passengers (or 56%) were Black, and 258 passengers (or 68%) were people of color. (Doc. 24 ¶ 77). The complaint then rattles off statistics for the racial composition of *all* American air travelers, noting that only 8% of American air

travelers are Black, 33% are people of color, and 67% are non-Hispanic White travelers. (*Id.*) English and André then contend, without any supporting facts for same, "[t]he Atlanta Airport's domestic airline population reflects the general population of American air travelers (*Id.* ¶ 78) to arrive at the likewise unsupported conclusion that

> for there to be a statistically significant possibility that the racial disparities in the jet bridge stops were random, 52% of airline travelers boarding domestic flights in the Atlanta Airport would have to be Black. But in fact, only 8% of air travelers are Black (and the passenger population at the Atlanta Airport is fairly representative of American air travelers). By the same accepted statistical standards, no more than 39 Black passengers should have been stopped if the stops were random. Yet, as described above, more than five times that number (211) were stopped.

(*Id.* ¶ 80).

To begin, the Court need not accept as true English and André's conclusory statement that "[t]he Atlanta Airport's domestic airline population reflects the general population of American air travelers." Nor is the Court required to accept as true the conclusory statement that the racial breakdown of *all* travelers reflects disparity in travelers subjected to CCPD's airport interdiction program (those boarding flights from Atlanta to Los Angeles). *Twombly*, 550 U.S. at 545. English and André's amended complaint contains no allegation that the CCPD interdiction program occurred on any other flights out of Atlanta except those traveling to Los Angeles; only includes examples of passengers stopped by CCPD on flights from

Atlanta to Los Angeles (Doc. 24 ¶¶ 9, 95); and fails to alleged any details about similarly situated White travelers on flights from Atlanta to Los Angeles which were stopped pursuant to CCPD's interdiction program.

In *Jordan*, a plaintiff was convicted of possession of a firearm and subject to the Armed Career Criminal Act ("ACCA") sentencing enhancement since he had been convicted of at least three prior qualifying convictions under the Act. 635 F.3d at 1188.  In support of his selective prosecution claim, the plaintiff submitted statistics which merely showed that African Americans account for about 93 of ACCA prosecutions in the Northern District of Georgia, while African Americans account for much less than 93% of the general population or population of felons carrying firearms. *Id*. at 1189. The Eleventh Circuit held that the plaintiff's statistics were "not probative of the similarly situated inquiry of the discriminatory effect test" as it failed to include the racial composition of criminal histories of similarly situated comparators. *Id*. (cleaned up).

The Court in *United States v. Cannon* likewise addressed statistics in the context of a selective prosecution claim based on race.

> Statistics from the Federal Public Defender's Miami office cover 25 of the 60 stash house cases that office handled within that district. Even if those 25 cases represent every reverse stash house sting out of the 60 cases, these statistics do not include similar cases in the district *not* handled by the Federal Public Defender's Miami office— they represent only a "fraction of the total number of prosecutions," as the government puts it. *And even if they did represent every similar case in the district, the statistics would still tell us nothing about*

33

*similarly situated non-minority individuals. Simply put, telling the court how many minorities have been prosecuted does nothing to prove how many non-minorities have not been.* And that similarly situated showing is plainly required under Supreme Court precedent and our own precedent to proceed to discovery.

987 F.3d 924, 938-39 (11th Cir. 2021); *see also Castaneda v. Partida*, 430 U.S. 482 (1977) (a case relied on by English and André which found that statistical evidence over an eleven-year period failed to state an Equal Protection violation as it provided no information surrounding the practices of individual deputies and how often the stop Black passengers versus passengers of other races or ethnicities.)

Just like the statistics in *Cannon* and *Castaneda*, English and André's statistics fail to plausibly allege that CCPD's airport interdiction program has a constitutional discriminatory effect.

> **B.** **The district court properly held that English and André failed to sufficiently plead that the CCPD airport interdiction program had a discriminatory purpose.**

Even if the district court incorrectly held that English and André's equal protection claim fails for not alleging a similarly situated comparator and discriminatory effect, they have likewise failed to allege a discriminatory purpose. This Court looks to several factors when determining whether a law enforcement's actions have a discriminatory intent. Citing *Greater Birmingham Ministries v. Sec'y of State for State of Ala.*, 992 F.3d 1299, 1322 (11th Cir. 2021), the factors

relied upon by English and André are (1) the impact of the challenged action; (2) the foreseeability of the disparate impact[11]; (3) knowledge of the disparate impact; and (4) the availability of less discriminatory alternatives. (Doc. 36 at 45). English and André's amended complaint does not plausibly allege any of these factors.

English and André's merits brief contends that they sufficiently allege a discriminatory purpose behind CCPD's airport interdiction program because their amended complaint alleges the program is "motivated by discriminatory purpose," (Doc. 24 ¶ 130) and that "officers conducting the jet bridge interdiction program select their targets based on race." (*Id*. ¶ 5). Like several others in the amended complaint, these allegations are no more than legal conclusions or mere recitals of the elements of a selective enforcement claim which this court need not accept as true. *Iqbal*, 566 U.S. at 678; *Twombly*, 550 U.S. at 545. The amended complaint even concedes that English and André's allegations are conclusory or speculative as it states that CCPD "*likely*"—not affirmatively—targets Black passengers based on race. (Doc. 24 ¶ 83). Additionally, as discussed in Section II (A) above, English and André's amended complaint fails to identify similarly situated comparators

---

[11]     English and André's merits brief fails to include an explanation as to how it was foreseeable that CCPD's interdiction program would have a disparate impact on Black travelers. (Doc. 36 at 44-48). Even still, the amended complaint contains nothing to plausibly allege foreseeability and a simple word search reveals that "foreseeability" is not mentioned in the complaint. (Doc. 24).

and their statistics fall far short of proving the purported discriminatory impact of CCPD's airport interdiction program.

As to the third factor, knowledge of the discriminatory impact, English and André rely on (1) their conclusory statement that CCPD was "on notice of the inherently coercive nature of law enforcement encounters in the airport generally" (Doc. 24 ¶ 74); (2) their conclusory statement that law enforcement officials in general, not specific to CCPD officers, "have long been on notice that the airport drug interdiction and cash seizure activity at issue" . . . "raises civil rights concerns and is more often associated with racial profiling . . ." (*Id.* ¶ 68); (3) the fact that CCPD officers complete and submit weekly logs recording the identifying information and race of passengers and a conclusory allegation that this provides "clear notice" of racial profiling (*Id.* ¶ 81); and (4) an allegation that another Black passenger, Mr. Elie, contacted CCPD to file a racial profiling complaint following his jet bridge encounter. (*Id.* ¶ 102).

Setting the conclusory statements aside, as this Court must do under *Iqbal* and *Twombly*, CCPD supervisors' receipt of weekly logs detailing the stops initiated by the airport interdiction program and the alleged complaint of one other passenger in no way leads to the conclusion that the program was operated with a discriminatory purpose. This is especially true, as the district court noted, when the

amended complaint fails to allege that CCPD supervisors directed their officers to target passengers based on race. (Doc. 40 at 44).

Because English and André have failed to plausibly allege that CCPD's airport interdiction program has both a discriminatory effect and purpose, this Court must affirm the district court's denial of their Equal Protection claims.

      **C.**      **Because English and Andre failed to plausibly allege an equal protection violation based on selective enforcement of CCPD's airport interdiction program, they cannot meet their burden of proving CCPD's officers are not entitled to qualified immunity.**

English and André merely argue that the district court failed to address the "clearly-established" prong of the qualified immunity analysis for their equal protection claim and state that it is clearly established that the Equal Protection Clause prohibits selective policing based on race. (Doc. 36 at 48). But as discussed in Section I (C) and II (A)-(B) above, because English and André's equal protection claims fail, they cannot meet their burden of proving the individual CCPD officers are not entitled to qualified immunity.

**III.**    **ENGLISH AND ANDRÉ'S AMENDED COMPLAINT FAILS TO PROPERLY ALLEGE A CLAIM AGAINST CLAYTON COUNTY UNDER *MONELL*.**

It is well settled that a county cannot be liable for the actions of its employees under a respondeat superior theory of liability. *Greech v. Clayton Cnty.*, 335 F.3d 1326, 1329 (11th Cir. 2003). Therefore, to hold a county liable for

purported constitutional violations, a plaintiff must plausibly allege that the county itself, versus its agents or employees, was responsible for causing such violations. *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 694 (1978) (finding that municipal liability can only be found when a constitutional violation was inflicted pursuant to a municipality's custom or policy). For English and André to succeed on their § 1983 claim against Clayton County, they must plausibly allege: "(1) that [a] constitutional right [was] violated; (2) that the [County] had a custom or policy that constituted deliberate indifference to that constitutional right; and (3) that the policy or custom caused the violation. *McDowell v. Brown*, 329 F.3d 1283, 1289 (11th Cir. 2004); *Bd. of Cnty. Com'rs of Bryan County, Okl. v. Brown*, 520 U.S. 397, 397 (1997).

English and André's theory of liability against Clayton County fails because as the district court correctly held, there were no underlying constitutional violations. *Rooney v. Watson*, 101 F.3d at 1381(holding that because city police officers did not violate a plaintiff's constitutional rights, the plaintiff's claim against the city failed as a matter of law). And, as discussed throughout this brief, because English and André failed to plausibly allege a violation of their Fourth or Fourteenth Amendment rights, it therefore follows that they did not suffer a constitutional harm and as a result, the County cannot be liable.

But even if English and André had plausibly alleged that they were deprived of their constitutional rights, the district court's dismissal of their claim against the County was proper as it is not sufficient to merely allege the existence of a "custom or policy" in general. *McDowell*, 329 F.3d at 1289. English and André's amended complaint also fails to plausibly allege that CCPD's airport interdiction program was adhered to with deliberate indifference. For example, the complaint alleges that Sergeant Smith's actions furthered CCPD's customs and policies that manifested deliberate indifference. (Doc. 24 ¶¶ 70, 82). The complaint likewise contains the blanket conclusion that "despite [the interdiction program's] evident constitutional shortcomings . . . CCPD allowed the program to continue unchanged, showing deliberate indifference to the constitutional rights of airline passengers such as Mr. English and Mr. André. (*Id.* ¶ 112). Further, the complaint asserts that CCPD's failure to provide written guidelines surrounding the program constitutes deliberate indifference. (*Id.* ¶¶ 120, 126). But just like the United States Supreme Court in *Iqbal* found that statements such as "[P]etitioners knew of, condoned, and willfully and maliciously subjected Respondent to harsh conditions of confinement . . . solely on account of [his] religion, race, and/or national origin . . .." to be insufficient to presume as true, so, too, are the allegations relied on by English and André. *Iqbal*, 566 U.S. at 678.

Lastly, English and André's merits brief asserts that CCPD "also acted with deliberate indifference to its officers' equal protection violations." (Doc. 36 at 53). To support this statement, they first rely on allegations in the complaint asserting that CCPD had actual or constructive notice of racial discrimination in the interdiction program based on them receiving general reports from other federal agencies cautioning law enforcement officers in general (not CCPD officers) about the risks of racial profiling in similar programs. (Doc. 36 at 53; Doc. 24 ¶¶ 67-68, 81). They also rely on the CCPD log books which contain identifying information about various passengers stopped during an eight month period during the airport interdiction program, as well one instance where another passenger, Mr. Elie, complained about the program's racial disparity to a CCPD supervisory officer. (Doc. 36 at 53; Doc. 24 ¶¶ 77-82, 102-03).

While the amended complaint may allege CCPD's receipt of weekly log books detailing the stops initiated by the airport interdiction program, it does not logically follow (nor is it plausibly alleged in the complaint outside legal conclusions or blanket assertions with no supporting facts) that the CPPD instructed its employees or agents to target passengers based on race. The complaint also only identifies two other incidents involving Mr. Elie and Mr. Lewis, as well as a Northern District of Georgia case which did not involve CCPD's airport interdiction program (*Noell v. Clayton Cnty.*, No. 1:15-CV-2404-

AT, 2016 WL 11794207 (N.D. Ga. Sept. 21, 2016), in support of their "deliberate indifference" argument. (Doc. 24 ¶¶ 93-113). But these isolated incidents are not sufficient to support a *Monell* violation. *See Doe v. Sch. Bd. of Broward Cnty., Fla.*, 604 F.3d 1248, 1266-67 (11th Cir. 2010) (finding two incidents occurring approximately thirteen months apart are insufficient to establish a custom); *Wakefield v. City of Pembroke Pines*, 269 F. App. 936, 940 (11th Cir. 2008) (same). Therefore, the district court's dismissal of English and André's claims against Clayton County was proper and must be upheld.

## CONCLUSION

For these reasons, Defendants-Appellees ask this Court to affirm the district court's dismissal as to each of English and André's claims and requests for relief.

Respectfully submitted,

**FREEMAN MATHIS & GARY, LLP**

*/s/ Elissa B. Haynes*
Jack R. Hancock
Georgia Bar No. 322450
Jack.hancock@fmglaw.com
Elissa B. Haynes
Georgia Bar No. 804466
Elissa.haynes@fmglaw.com
A. Ali Sabzevari
Georgia Bar No. 941527
asabzevari@fmglaw.com
*Counsel for Defendants-Appellees*

100 Galleria Parkway, Suite 1600
Atlanta, Georgia 30339-5948
(770) 818-0000 (telephone)

# CERTIFICATE OF COMPLIANCE

1.  This document complies with the word limit of Fed. R. App. P. 32(a)(7)(B) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this document contains 9,736 words starting at the Statement of Issues and continuing through the Conclusion. This word count was derived in reliance on the word count of the word-processing system (Microsoft Word) used to prepare this document.

2.  This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in proportionally-spaced typeface using Microsoft Word in Times New Roman, 14-point font.

Dated:  April 9, 2024.

/s/ *Elissa B. Haynes*
Elissa B. Haynes
Georgia Bar No. 804466

*Counsel for Defendants-Appellees*

## CERTIFICATE OF SERVICE

I hereby certify that on April 9, 2024, I caused a copy of the foregoing to be electronically submitted to the Clerk of Court using the CM/ECF system which will automatically send electronic mail notification to counsel of record. I further certify that on April 9, 2024, four copies of the foregoing document were sent via U.S. Mail in accordance with Fed. R. App. P. 25(c)(1)(B) to:

David J. Smith, Clerk of Court
U.S. Court of Appeals for the Eleventh Circuit
56 Forsyth Street, NW
Atlanta, Georgia 30303

Respectfully submitted,

**FREEMAN MATHIS & GARY, LLP**

*/s/ Elissa B. Haynes*
Elissa B. Haynes
Georgia Bar No. 804466
Elissa.haynes@fmglaw.com

100 Galleria Parkway, Suite 1600
Atlanta, Georgia 30339-5948
(770) 818-0000 (telephone)